**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RAHEEM SYLLA,** | |
| **Petitioner,** | **Civil Action No. 16-8124 (ES)** |
| **v.** | **OPINION** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

**MCNULTY, DISTRICT JUDGE**

Petitioner Raheem Sylla, a prisoner currently confined at the Federal Correctional Institution, Fort Dix, moves to vacate, correct, or set aside his federal sentence pursuant to 28 U.S.C. § 2255. (Petition)[1]. Respondent United States of America opposes the motion. (Answer). Also before the Court is Sylla's "motion for issuance of subpoena for *in camera* review" of information relating to "the dual prosecution agreement between the United States Attorney's Office and State's Attorney's Office for Essex County New Jersey that is a part of Project Exile and Project Safe Neighborhood Program." (Motion for Discovery.). Additionally, Sylla filed a motion to stay the case pending the Supreme Court's decision in *United States v. Davis*. (DE 19). The stay motion was denied as moot

---

[1] Citations to the record will be abbreviated as follows:

    Motion for Discovery = Motion for issuance of subpoena for in camera review of "any and all information" relating to the dual prosecution agreement between the United States Attorney's Office and state's attorney's office for Essex County New Jersey that is a part of Project Exile and Project Safe Neighborhood Program, DE 2

    Petition = Motion to vacate, correct, or set aside his federal sentence pursuant to 28 U.S.C. § 2255, DE 7

    Answer = Answer to motion to vacate, DE 12

    Plea Tr. = Transcript of Sylla's guilty plea hearing dated July 7, 2015, DE 12-1

after the Supreme Court rendered its decision, reported as *United States v. Davis,* 139 S. Ct. 2319 (2019). (DE 21) I consider the effect of the *Davis* decision in this Opinion. For the reasons explained herein, the Court denies the Petition, the Motion for Discovery, any claims Sylla may have raised based on *Davis*, and a certificate of appealability.

## I.     BACKGROUND

Sylla was charged in the United States District Court for the District of New Jersey in a two-count information for (i) carjacking in violation of 18 U.S.C. § 2119(1) (Count I), and (ii) during and in relation to the carjacking charged in Count I, knowingly using, carrying, and brandishing a firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count II). (*United States v. Sylla,* Crim. No. 15-0338, DE 11). Sylla submits that he was initially charged in state court, but his case was then referred to the United States Attorney's Office while the state prosecution concluded with the entry of a *nolle prosequi.* (Petition at 5–6; *see* Motion for Discovery at 5).

On July 7, 2015, Sylla waived hi rights to be prosecuted by indictment and instead pleaded guilty before this Court to the two-count information pursuant to a written plea agreement. (DE 12; Plea Tr. at 28:9–29:5). On October 27, 2015, the Court sentenced Sylla to thirty months on Count I and eighty-four months consecutive on Count II, for a total of 114 months' imprisonment, followed by a three-year term of supervised release. (*United States v. Sylla*, Crim. No. 15-0338, DE 18 at 2–3). Sylla did not file a direct appeal. (Petition at 3).

On October 31, 2016, Sylla filed a motion under 28 U.S.C. § 2255 (DE 1), which was administratively terminated because of Sylla's failure to comply with filing requirements (DE 4). Thereafter, Sylla refiled this Petition to vacate, set aside, or correct his conviction or sentence under 28 U.S.C. § 2255. Sylla's claims include (i) a challenge to his conviction for not having an opportunity to enter a plea agreement with the state before he was prosecuted by the United States Attorney's Office; and (ii) ineffective assistance of both his state and federal counsel. (*Id.* at 5–6). The Government filed its Answer on June 14, 2017.

On the same day Sylla filed his original petition, he also filed a Motion for Discovery, seeking a subpoena under Rule 1 and Rule 6 of the Rules Governing Section 2255 Cases, as well as Rule 17 of the Federal Rules of Criminal Procedure. (Motion for Discovery at 6). The Government opposes the Motion for Discovery in a footnote to its Answer. (Answer at 10 n.1).

As noted above, while this Petition was pending the Supreme Court filed its decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). (DE 19). This Court ordered supplemental briefing addressing the effect of *Davis.* (D.E. Nos. 21 & 22). The Government filed a brief on January 30, 2020. (DE 27). Sylla's Petition and Motion for Discovery are fully briefed and ready for disposition.

## II.   LEGAL STANDARDS

### A. *Section 2255 Standard*

Section 2255 provides in relevant part as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). A district court must hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255(b); *see also United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir. 2005).

### B. *Ineffective Assistance of Counsel*

The United States Supreme Court set forth the two-prong standard by which courts must evaluate claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The first part of the *Strickland* test requires 'showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015)

(quoting *Strickland*, 466 U.S. at 687). Counsel's performance is deficient if his representation falls "below an objective standard of reasonableness" or outside of the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 688 & 690. In examining the question of deficiency, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. In addition, judges must consider the facts of the case at the time of counsel's conduct and must make every effort to escape what the *Strickland* court referred to as the "distorting effects of hindsight." *Id.* The petitioner bears the burden of showing that counsel's challenged action was not sound strategy. *See Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). To satisfy the second "prejudice" prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

With respect to the sequence of the two prongs, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

## III.   ANALYSIS

### A. *Section 2255 Petition and Motion for Issuance of Subpoena*

Sylla appears to be arguing that, because he was initially in state custody, he was wronged because he was prosecuted in federal court rather than in state court. (*See* Petition at 5). Specifically, Sylla alleges that the federal prosecutor and the state prosecutor were involved in "Federal-State Joint Programs," under which the prosecutors must adhere to certain mandates. (*Id.*). One such mandate, according to Sylla, requires that the United States Attorney's Office inform a defendant who was "in state court prior to any federal indictment or complaint" that "the defendant could avoid federal prosecution by accepting the

4

contract plea offer." (*Id.*). Sylla alleges that he and his attorney "were not informed of the program, nor any federal involvement, [nor] that [Sylla] could avoid federal prosecution." (*Id.*).

Related to that argument is a Motion for Discovery, wherein Sylla seeks

> records reflecting how his case was accepted and transferred for Federal prosecution, dishonesty, lack of candor, misconduct, inaccurate and misrepresentation, fraud on State and Federal Courts, intentional failure/refusal to adhere to the U.S. Department and/or any other acts which would reflect defects in the integrity of State and/or Federal Court plea proceedings resulting in a miscarriage of justice . . .

(Motion for Discovery at 5).[2] Sylla asks these records to be submitted for the Court's *in camera* review "to determine whether if they contain *Brady* and *Giglio* material." (*Id.* at 6).

The basis of Sylla's discovery request appears to be a document titled "Baltimore EXILE—A Comprehensive Strategy to Reduce Gun Violence," published by the United States Attorney's Office in the District of Maryland (the "Baltimore Exile Memorandum"). (DE 1-2; *see* Motion for Discovery at 3; DE 1 at 13–14). It provides details regarding the City of Baltimore's "unified and comprehensive strategy to combat gun crime that combines law enforcement efforts, community action and revitalization, and public awareness." (DE 1-2 at 2). The Baltimore Exile Memorandum states that, in appropriate cases where the Assistant United States Attorney ("AUSA") has made a determination that "the case is ready to be indicted prior to the date of the arraignment on the pending state charge or within 90 days of the date of arrest," the State's Attorney's Office for Baltimore City will communicate the AUSA's intentions to the defendant and his counsel. (*Id.* at 4; *see also* Motion for Discovery at 4). So informed, the

---

[2] Sylla refers to exhibits attached to his original Section 2255 petition filed on October, 31, 2016. (*See, e.g.*, Motion for Discovery at 3 (citing to Exhibits 1 and 3 to the original Section 2255 petition)). I have considered the original Section 2255 petition, as well as the exhibits attached thereto, to the extent they are relevant to his arguments here.

5

defendant has the option to accept a mandatory five-year state term, at which point "the federal case will be declined without ever having been indicted." (DE 1-2 at 4). But "if the defendant does not accept the five-year plea and is not in state custody," the defendant will be taken into federal custody and be prosecuted federally. (*Id.*).

That Memorandum, of course, is an agreement among the authorities in Maryland. Sylla speculates, however, that similar "Federal-State [j]oint [p]rograms" govern his New Jersey case and that he was wronged because, "at no time during Petitioner's state court proceedings was he, nor his court-appointed defense counsel informed of a contract plea offer, the [U]nited [S]tates [A]ttorney's [O]ffice's entanglement with Petitioner's state court proceedings, nor that [Petitioner] could avoid [f]ederal [p]rosecution by accepting a plea offer in state court." (DE 1 at 14; *see* Petition at 5).[3] Accordingly, Sylla seeks documents that would "undermine the credibility of the prosecutors or show that they contrived information or evidence in order to avoid the [s]tate and [f]ederal [c]ourt from determining whether the [s]tate's request for *nolle prosequi* was in bad faith and to gain a [f]ederal indictment (or complaint) . . . ." (Motion for Discovery at 5).

Finally, premised on the alleged lack of information and opportunity to enter a plea agreement with the state prosecutors, Sylla argues that he was denied effective assistance of counsel in his state and federal proceedings. (Petition at 6). Specifically, Sylla argues that his state court attorney did not "negotiate and accept a plea offer in state court" despite Sylla's willingness to enter plea negotiations with state prosecutors. (*Id.*). Sylla also argues that his

---

3    Sylla admits that, even under the Baltimore Exile program, which is not applicable to him, he would not have been qualified to be notified of the U.S. Attorney's intention to prosecute him federally or to opt for a state conviction and sentence. His prior criminal record would have disqualified him. (Motion for Discovery at 5 ("Although [Sylla does] not fall under either section due to hi[s] not having any prior convictions, if defendants with one or more misdemeanor or felony prior convictions are to be notified of the U.S. Attorney's Office's intentions, prior to any [f]ederal indictment or complaint, that a defendant without any priors are to be informed as well.")).

attorney during the federal proceedings advised him to accept the federal plea offer without informing him that there was a prior plea offer "that wasn't provided to defendant when the U.S. Attorney's Office was mandated to do so . . . ." (*Id.*).

Sylla's arguments are meritless. He alleges generally that "Project Exile and Project Safe Neighborhoods programs are spearheaded by the U.S. Justice Department and administered locally by the U.S. Attorney's office." Sylla provides nothing to indicate that a program similar to Baltimore Exile exists between the United States Attorney's Office in the District of New Jersey ("USAO-NJ"), on the one hand, and New Jersey Attorney General's Office ("NJAGO"), or any local state prosecutors, on the other.

But even if he quali

Even if a similar program existed here, and even if the USAO-NJ had issued guidelines similar to those in the Baltimore Exile Memorandum, by defendant's own admission his criminal record would disqualify him. *See* n. 3, *supra*. And even if the program existed, and even if Sylla qualified for it, such guidelines and policies alone would not create enforceable rights. *United States v. Gomez*, 237 F.3d 238, 241 n.1 (3d Cir. 2000) (noting that contentions that United States Attorneys' Manual creates rights entitling the defendant to relief "would be against the weight of judicial authority"); *see also United States v. Wilson*, 413 F.3d 382, 389 (stating that "Department of Justice guidelines and policies do not create enforceable rights for criminal defendants") (collecting cases). Sylla thus has no basis to argue that he is entitled to a plea offer from the state prosecutors, or that he had the right to somehow avoid federal prosecution. *See Lafler v. Cooper*, 566 U.S. 156, 168 (2012) ("It is, of course, true that defendants have no right to be offered a plea . . . ."); *see also Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) ("[T]here is no constitutional right to plea bargain . . . .").

For the same reasons, Sylla's state and federal counsel were not ineffective for failing to advise Sylla on rights and opportunities he never had. Sylla's reliance on *United States v. Morris*, 470 F.3d 596 (6th Cir. 2006) and *United*

*States v. Nixon*, 318 F. Supp. 2d 525, 526 (E. D. Mich. 2004), to support his Petition and Motion for Discovery is thus misplaced. (*See* Motion for Discovery at 4–5; DE 16 at 2–6). To begin with, these cases, which are from other Circuits, concern Project Exile and Project Safe Neighborhood Programs that were in place in other jurisdictions, not in New Jesey. *Morris* and *Nixon* also dealt with fundamentally different scenarios. The defendants in both of those cases received state plea offers that they rejected based on their counsel's advice, or the lack thereof, and subsequently faced more severe federal sentencing. *See Morris*, 470 F. 3d at 598–599 (the defendant declined the state plea offer based on his counsel's estimate of a federal sentence of 62 to 68 months, while the federal guidelines range was 90 to 97 months if he pleaded guilty, or 101 to 111 months if he did not); *Nixon*, 315 F. Supp. 2d at 877–78 (the defendant declined the state plea offer based on his counsel's advice that "he could get five years" in the federal system, while he actually faced a minimum penalty of 262 months).

Here, there was no state plea offer as to which Sylla's counsel could offer advice, whether effective or ineffective. And there was no program in place whereby acceptance of such a hypothetical plea would head off a federal prosecution or conviction. (*See, e.g.*, Petition at 5; Answer at 6). Sylla thus has no basis to argue that his counsel were ineffective or that he would have been better off had his counsel advised him differently. *See Lafler*, 566 U.S. at 164 ("[T]he defendant must show that but for the ineffective assistance of counsel there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.").[4]

---

[4]     Sylla also argues that his counsel failed to "review any documents that w[ere] important to the pre-trial process." (Petition at 6). To the extent that this argument is independent from his alleged entitlement to a state plea offer, the record is silent about what stage of discovery Sylla's state case was in before the federal government assumed jurisdiction. Other than Sylla's uncorroborated assertion that his counsel failed to review said documents, he does not explain how counsel's review of any discovery in the state case, which ended in a *nolle presqui,* would have impacted his case in federal court, where separate discovery obligations and entitlements apply.

Because the petition fails to set forth a legally viable basis to challenge the conviction or sentence, I will not authorize further discovery. A habeas petitioner, like Sylla, "is not automatically entitled to discovery under the Federal Rules of Civil Procedure." *In re Beard*, 383 F. App'x 132, 133 (3d Cir. 2010). Under Rule 6 of the Rules Governing Section 2254 and Section 2255 Cases, district courts may authorize discovery only "for good cause." Rule 6(a); *see also In re Beard*, 383 F. App'x at 133. As discussed above, the Court finds that Sylla falls short of showing any basis to challenge his sentence, let alone good cause demonstrated by "specific allegations" showing "reasons to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *In re Beard*, 383 F. App'x at 133–34 (quoting *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)) (internal alterations omitted).

I make a more general point as well. Fundamentally, through his Petition and Motion for Discovery, Sylla asks the Court to review USAO-NJ's and NJAGO's prosecution decisions, which would overstep the Court's role in the tripartite form of government and violate the doctrine of separation of powers. As the Third Circuit has recently reiterated, "the Executive Branch has broad discretion as to whom to prosecute, and this discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *United States v. Wright*, 913 F.3d 364, 373 (quoting *Wayte v. United States,* 470 U.S. 598, 607–08 (1985)) (internal quotation marks omitted). This is because the Court is not equipped to evaluate factors such as "the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Id.* Moreover, "[s]tate and federal governments act as separate sovereigns, with distinct interests in criminalizing and prosecuting certain conduct." *United States v. Perry*, 79 F. Supp. 3d 524, 529 (D.N.J. 2015) (internal quotation marks and citations omitted). If some case, statute, or rule created an enforceable right, that

---

Consequently, Sylla has not established that he was prejudiced by his state-court counsel's representation. *See Strickland*, 466 U.S. at 694.

9

would be one thing. But Sylla's request for the Court to look into "whether the State's request for *nolle prosequi* was in bad faith and to gain a [f]ederal indictment" is another; it constitutes the kind of impermissible review that would threaten to "chill law enforcement by subjecting the prosecutor's motives and decision making to outside inquiry." *Wayte*, 470 U.S. at 607.

Accordingly, Sylla's Petition and his Motion for Discovery are denied. As discussed above, because the Court finds that the records conclusively show that Sylla is not entitled to relief, no evidentiary hearing will be convened. *See* 28 U.S.C. § 2255(b).

**B.  *United States v. Davis***

In his motion to stay the case pending the Supreme Court's decision in *United States v. Davis*, Sylla does not articulate any argument other than the possibility that the then-pending *Davis* case would "clarify the definition of crime of violence." (DE 19 at 1). *Davis*, once decided, held that the residual 18 U.S.C. § 924(c)'s residual clause was unconstitutionally vague. It does not, however, affect Sylla's conviction.

Under 18 U.S.C. § 924(c)(3)(A), a "crime of violence" is defined as

(A)     has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)     that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Subsection A is colloquially referred to as the "elements clause," and Subsection B as the "residual clause." The Supreme Court in *Davis* held that the residual clause is unconstitutionally vague because it "provides no reliable way to determine which offenses qualify as crimes of violence." 139 S. Ct. at 2324. *Davis* thus applies only to the residual clause, and does not affect the elements clause of Section 924(c)(3)(A).

10

Sylla's sentence was properly enhanced under the elements clause; the residual clause, in his case, is superfluous. He was convicted and sentenced for carjacking while brandishing a firearm. (*United States v. Sylla,* Crim. No.15-338, DE 18 at 1). The federal carjacking statute has among its elements that a person takes a motion vehicle "by force and violence or by intimidation, or attempts to do so." 18 U.S.C. § 2119.[5] In addition, the carjacking statute requires that the person takes the vehicle "with the intent to cause death or serious bodily harm." *Id.* I join the consensus of authority and hold that Sylla's conviction of carjacking constitutes a crime of violence under the element clause of Section 924(c)(3). *See, e.g.*, *Berger v. United States*, No. 16-3650, 2020 WL 528852 at *1 (D.N.J. Jan. 31, 2020) ("Several Courts of Appeals, though not the Third Circuit, have also held that carjacking in violation of 18 U.S.C. § 2119 is a crime of violence because it satisfies the 'physical force' element as defined in § 924(c)(3)(A)."); *United States. v. Henry*, No. 06-3301, 2020 WL 2556943, at *4–5 (E.D. Pa. May 19, 2020); *Lowe v. United States*, No. 04-0131, 2020 WL 429777, at *3 (M.D. Pa. Jan. 28, 2020); *see also Estell v. United States*, 924 F.3d 1291 (8th Cir. 2019); *United States v. Jackson*, 918 F.3d 467, 486 (6th Cir. 2019); *United States v.*

---

[5]     18 U.S.C. § 2119 provides that:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
>
> (1) be fined under this title or imprisoned not more than 15 years, or both,
>
> (2) if serious bodily injury (as defined in section 1365 of this title, including any conduct that, if the conduct occurred in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and
>
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

*Jones*, 854 F.3d 737 (5th Cir. 2017); *United States v. Evans*, 848 F.3d 242 (4th Cir. 2017); *In re Smith*, 829 F.3d 1276, 1280 (11th Cir. 2016).

The Supreme Court's decision in *Davis* does not affect Sylla's conviction and sentence. To the extent that Sylla intends to raise a claim based on *Davis*, that claim is denied.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(2), a petitioner may not appeal from a final order in a proceeding under § 2255 unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As Sylla's claims are without merit, he has failed to make a substantial showing that he was denied a constitutional right. No certificate of appealability shall issue.

## V.    CONCLUSION

For the reasons discussed above, Sylla's Petition, the Motion for Discovery, as well as any claims raised under *Davis* are denied. An appropriate order follows.

Dated: September 10, 2020

/s/ Kevin McNulty

_____

**Kevin McNulty, U.S.D.J.**